(C. D. 140)

T. R. SAVAGE Co. *v.* UNITED STATES

United States Customs Court, Third Division

Decided April 3, 1939

Woodman, Skelton, Thompson & Chapman (Nathan W. Thompson of counsel) for the plaintiff.

Charles D. Lawrence, Acting Assistant Attorney General (Richard F. Weeks, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is a suit against the United States brought to obtain a refund of money claimed to have been exacted in excess of the amount due as customs duties upon an importation of molasses from Barbados. The case arose at the port of Portland, Maine, and hearing was had at that port. Duty was assessed on the molasses under the provisions of paragraph 502 of the Tariff Act of 1930 at various rates upon tests determined by the customs officials. Said paragraph 502 is in the following language:

PAR. 502. Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, one-fourth of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five one-thousandths of 1 cent additional for each per centum of total sugars and fractions of a per centum in proportion. Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three one-hundredths of 1 cent per pound of total sugars.

From statements in the record it appears that this cause was called for hearing at Portland on May 25, 1937, at which time the judge sitting there suggested to counsel for the importer that he have a new test made of the molasses in question and apparently the case was continued for that purpose. In the following year, to wit, May 24, 1938, the cause was again called for hearing, when it was established that some time, possibly early in July 1937, the importer withdrew from the 500-barrel lot which he had remaining on hand a group of samples taken from 25 barrels after the manner that the original sampling had been made. These he caused to be examined by a chemist at the State agricultural college with the following results:

| Marks | | Percent |
|---|---|---|
| #1 | Sucrose | 47. 36 |
| | Reducing sugars calculated as invert sugar | 19. 35 |
| #2 | Sucrose | 40. 89 |
| | Reducing sugars calculated as invert sugar | 26. 85 |
| #3 | Sucrose | 40. 52 |
| | Reducing sugars calculated as invert sugar | 26. 45 |

He also sent a sample to a commercial chemist in Boston whose analysis showed the following results:

| Marks | | Percent |
|---|---|---|
| #1 | Sugar content | 64. 74 |
| | Moisture content | 30. 01 |
| #2 | Sugar content | 65. 84 |
| | Moisture content | 28. 22 |
| #3 | Sugar content | 68. 39 |
| | Moisture content | 27. 41 |

At the time of the hearing importer's attorney produced in evidence Exhibit 5 which was a result of the chemical analysis made by Mr. I. Schnopper, the Government chemist in the United States customs laboratory in New York, in July 1936, upon which was the following certificate:

I hereby certify that, with the exception of the parenthetical items, the attached laboratory report (No. B7195/7206) is a true copy of the report of analyses made by the Chief Chemist in the U. S. Laboratory at New York, and relates to samples of molasses imported by T. R. Savage of Bangor, Maine, and covered by Entry A–12, Bangor, C. I. E. Report No. 19, June 5, 1936, and which were submitted to the U. S. Customs Laboratory at New York for analyses on June 12, 1936.

Dated at U. S. Appraiser's Stores, New York, N. Y., May 20, 1938

(Signed) L. C. Bowen,
*Examiner of Merchandise.*

Approved:

(Sgd). A. Gillies,
*Assistant U. S. Appraiser.*

The Government chemist later appeared and gave oral testimony in which he establishes that he followed the Government regulations in making the tests of the samples referred to in said Exhibit 5.

Importer's attorney considers that there was something strange and suspicious about the Government findings, based largely, as we gather, from the fact that a retest of the samples was not made upon request of the importer. Concerning this circumstance it is to be noted that the importer claims he was first advised of the appraiser's report early in September. We observe that Exhibit 1, offered by the importer, shows by rubber stamp statement on the back thereof that the samples taken were received from the sending port on June 11, 1936, delivered to the New York appraiser on July 28, 1936, and returned to the sending port on July 31, 1936. The report itself is dated July 28, 1936. Why the importer did not receive notice, the court cannot say, of course, but the fact that a retest was not made undoubtedly is due to the circumstance of the long delay in making the request for a retest. Article 727 of the Customs Regulations of 1931, relating to a retest of molasses, is as follows:

*Art. 727.* \* \* \* Owing to the unstable character of molasses and sirup the results of any retest cannot have, from the standpoint of correctness for appraise-

ment purposes, the same significance which the results of a retest on sugar possess. A retest shall be granted by the appraiser only when the information in his possession indicates a strong probability of an error. * * *.

This regulation is reasonable in view of the fact of common knowledge that the sugar in molasses and sirups has a tendency to crystalize and therefore a sample taken after a lapse of time could not possibly contain the total sugars to be found in a sample taken immediately upon importation. The crystalized sugar that would, in the course of time, settle to the bottom of the container would reduce the amount of sugar in the sample. The "suspicious" circumstance pointed to in the argument of plaintiff's attorney arises from the rule which the Government has adopted for the protection of the importer by requiring that the samples be transmitted to the chemist under numbers which do not identify the importation.

Article 718 of the Customs Regulations of 1931, concerning the identification of samples, is as follows:

*Art. 718. Identification of samples.*—In transmitting the samples from the examiner's room to the laboratory they shall be indicated only by serial numbers, the key to which shall consist of the appraisement lists, on which the same numbers must appear and the laboratory officers shall not be informed in any manner as to the identity of such samples. Appraisement lists shall be made out in duplicate, an original and carbon copy, the latter to be filed in the order of the sample serial numbers for reference if required. Sample serial numbers shall begin with No. 1 at the beginning of each year and continue throughout the year and all numbers shall be accounted for in the records specified.

That the sample examined by the Government chemist was the sample taken from the importation in controversy is made clear by the certificate of Examiner Bowen on Exhibit 5 which identifies the same as the sample from Entry A 12 Bangor and identifies the report made thereon as C. I. E. Report 19, which is the number appearing on Exhibit 1. The consumption entry in this case is A 12 and entry was made at Bangor, Maine. It is our opinion that the Government analysis should have been accepted as proof of the correct sugar content in this case for the reasons as above noted, that the delay in taking the samples which were tested by the importer did result in an inaccurate showing of the correct sugar content of the merchandise imported. During more than a year's time that the molasses was in storage crystalization of sugars could have taken place and undoubtedly did take place, so that the samples extracted would not truly represent the sugar content on importation.

The importer produced Exhibit 2, a list showing the tests of various importations of molasses which were made at Portland, Maine, during the year 1936. This list can have little bearing on the case before us, but if examined on the basis of the analyses made by the importer, it would tend to establish the correctness of the conclusions which the

court has reached here because the analyses submitted by the importer show a considerably lower sugar content than that on any importation made during 1936 at that port. This is a persuasive fact in support of the statement that the samples taken by the importer in July 1937 did not correctly represent the sugar content of the merchandise at the date of importation.

It is our opinion that the protest should be overruled. It is so ordered.